RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0376p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PATRICIA L. AMOS, et al.,
             *Plaintiffs-Appellants*,

                                          No. 10-3319

        *v.*

PPG INDUSTRIES, INC., et al.,
             *Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:05-cv-70—Michael H. Watson, District Judge.

Argued: April 19, 2012

Decided and Filed: November 1, 2012

Before: MARTIN, SUTTON, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Timothy F. Cogan, CASSIDY, MYERS, COGAN, VOEGELIN, L.C., Wheeling, West Virginia, for Appellants. Richard J. Antonelli, BABST CALLAND, P.C., Pittsburgh, Pennsylvania, for Appellees. **ON BRIEF:** Timothy F. Cogan, CASSIDY, MYERS, COGAN, VOEGELIN, L.C., Wheeling, West Virginia, for Appellants. Richard J. Antonelli, Rebecca J. Dick-Hurwitz, Charles Warner, BABST CALLAND, P.C., Pittsburgh, Pennsylvania, for Appellees.

_____

## OPINION

_____

KETHLEDGE, Circuit Judge. The question presented in this case is whether the plaintiffs—retired former employees of the defendant PPG—are bound by a decision adverse to their former unions in separate litigation to which the plaintiffs were not a party. The district court held that the plaintiffs are bound by that decision. We disagree, and reverse.

1

I.

While employed at PPG, the plaintiffs were represented by three labor unions for purposes of collective bargaining.  In August 2001, PPG modified the health benefits of its retirees by requiring that the retirees pay a portion of their benefits' cost.  The unions thought the modification was a breach of certain collective bargaining agreements that they had negotiated with PPG, so they sued PPG in the Western District of Pennsylvania.  In their complaints, the unions each recited that they represented PPG "employees."  The unions alleged that the health benefits of PPG's retirees had vested prior to August 2001 and thus were not subject to change.  As relief, the unions requested that the district court order PPG to arbitrate the benefit dispute with the unions.  The parties thereafter conducted discovery and filed cross-motions for summary judgment.  The district court entered judgment for PPG, holding that its retirees' benefits had not vested.  The Third Circuit affirmed.  *See Int'l Chem. Workers Union Council v. PPG Indus., Inc.*, 236 F. App'x 789, 791 (3d Cir. 2007).

Meanwhile, in January 2005—more than a year before the district court entered judgment in the Pennsylvania action—a handful of individual retirees filed this lawsuit against PPG as a putative class action in the Southern District of Ohio.  Their core allegation was identical to the one in the Pennsylvania action:  that the health benefits of PPG's retirees were vested and thus not subject to change.  The plaintiffs asserted claims under § 301 of the Labor Management Relations Act and § 1132(a)(1)(B) and (a)(3) of ERISA.  As relief, they sought monetary damages and an injunction ordering PPG "to reinstate full coverage for the class members[.]"

After the Third Circuit affirmed the district court's judgment in the Pennsylvania case, PPG moved for summary judgment in the Ohio case.  PPG argued that the basis of the Pennsylvania court's judgment—*i.e.,* that the health benefits of PPG's retirees had not vested—collaterally estopped the plaintiffs from arguing the contrary in this case.  The district court agreed and granted summary judgment to PPG.  This appeal followed.

II.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). Part of that federal common law is the doctrine of issue preclusion. The doctrine bars repetitive litigation of the same issue between the same parties: if two parties actually litigated an issue in a prior case, and a court necessarily decided the issue pursuant to entry of a final judgment, then the losing party cannot relitigate the issue against the winner in a later case. *Id*. at 892. For the doctrine to apply, however, the loser must have had a "full and fair opportunity" to litigate the issue in the prior case. *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). That is the only element of the doctrine at issue here.

"A person who was not a party to a suit"—as the plaintiffs here were not to the Pennsylvania case—"generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Id.* That is only common sense: persons absent from a case usually cannot litigate anything in it. "The application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court." *Id.* at 892–93 (internal quotation marks omitted). Like other rules, however, "the rule against nonparty preclusion is subject to exceptions." *Id*. at 893. The issue here is whether any of the exceptions apply.

In *Sturgell*, the Supreme Court recited six exceptions to the rule against nonparty preclusion. PPG argues that two of them apply here. One we dispatch summarily: that "nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment." *Id.* at 894 (internal punctuation omitted). PPG says there was such a relationship between the plaintiffs in this case and the unions in the Pennsylvania one, because the unions were the plaintiffs' exclusive agents for purposes of collective bargaining while (but not after) the plaintiffs were still employed by PPG. But the term "pre-existing substantive relationships" is not nearly so elastic as PPG suggests. The term refers primarily to relationships arising from property law: "Qualifying relationships include, but are not

limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id*. (citing Restatement (Second) of Judgments §§ 43–44, 52, 55 (1982)). No such relationship exists between the unions and the plaintiffs here. The Restatement does suggest that membership in an "unincorporated association[]" is a relationship sufficient to trigger this exception to the rule, *see* 2 Restatement § 61; and a labor union is typically an unincorporated association. *See Certain Interested Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994). But a dispositive fact of this case is that the plaintiff retirees were *not* members of the unions at the time of the judgment in the Pennsylvania case. So there is no relationship that binds the plaintiffs here to the decision there.

The other exception is the one the district court thought applies here: "in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Sturgell*, 553 U.S. at 894 (internal punctuation omitted). Prior to *Sturgell*, several Circuits—though not ours—had expanded this exception to comprise a theory of "virtual representation" that would bind nonparties to a judgment whenever, in essence, it made practical sense to do so. *See id.* at 888–91, 895–96. But the whole point of *Sturgell* was to cut the adequate-representation exception down to size. The Court expressly rejected a "broad theory of virtual representation[,]" *id.* at 898, and instead reiterated the more narrow "limitations attending nonparty preclusion based on adequate representation." *Id.* at 900.

Specifically, the Court recited a "minimum" of two and "sometimes" three elements necessary to a finding of adequate representation for purposes of nonparty preclusion. The "sometimes" element is that the nonparty have "notice of the original suit[.]" *Id.* That element is met here: the plaintiff retirees knew about the Pennsylvania suit. A second element is that "the interests of the nonparty and her representative are aligned[.]" *Id.* Whether that element is met here is a complicated question. On the one hand, the unions undisputedly brought the Pennsylvania suit in a good-faith attempt to benefit PPG's retirees. But whether a union's interests always align with those of its

former members is not so clear. A union's duty is to represent its *current* members, not its former ones. *See generally Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 173 (1971). Here, the unions' recitals in the Pennsylvania complaints make clear that it represents PPG's "employees," not its retirees. And it is easy to imagine instances where the two groups' interests might conflict. An employer might offer more generous benefits for current employees, for example, in exchange for reducing benefits to retirees. (Indeed, unions are routinely forced "to make reasoned choices" to resolve conflicts *within* their own membership. *See Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 764 (7th Cir. 1988) (Easterbrook, J.). But that does not disqualify unions from representing their memberships as a whole. *Id.*) Suffice it to say that the question whether a union's interests are aligned with those of its retirees cannot be answered categorically. The answer turns on the facts of the particular case.

But we need not answer that question here. For the third element necessary to adequate representation for purposes of nonparty preclusion is the existence, in the prior litigation, of "special procedures to protect the nonparties' interests or an understanding by the concerned parties that the first suit was brought in a representative capacity." *Sturgell*, 553 U.S. at 897, 900. The only example of "special procedures" mentioned in *Sturgell* are those for class actions, *i.e.*, "the procedural safeguards contained in Federal Rule of Civil Procedure 23." *Id*. at 900–01. (This aspect of *Sturgell* renders questionable our earlier holding that a union may not litigate on behalf of a Rule 23(b)(2) class of retirees without their consent. *See United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 283 (6th Cir. 2007).) The district court in the Pennsylvania action neither certified a class (nobody asked it to) nor employed any other "special procedures" to protect the retirees' interests in that action. So the plaintiffs here are not bound to the Pennsylvania decision by reason of any special procedures there.

Thus the issue boils down to whether there was "an understanding by the concerned parties" that the Pennsylvania action was brought by the unions "in a representative capacity" on behalf of the plaintiff retirees. *Sturgell*, 553 U.S. at 897.

Neither *Sturgell*, nor an earlier case in this line—*Richards v. Jefferson County*, 517 U.S. 793, 801–02 (1996)—spell out the understanding necessary for a party to act in a representative capacity for purposes of nonparty preclusion. Some circuits have assumed that a unilateral understanding by the party in the first action is enough to satisfy this element. *See, e.g.*, *Pelt v. Utah*, 539 F.3d 1271, 1289 (10th Cir. 2008). At least one other circuit has assumed that the understanding must be bilateral with the parties to be represented. *See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 313 (3d Cir. 2009). No circuit, to our knowledge, has analyzed the issue directly.

But here we have no occasion to be the first. Our circuit has already decided what a union must do in order to represent retirees: "obtain the assent of the retirees." *Cleveland Elec. Illuminating Co. v. Util. Workers Union*, 440 F.3d 809, 817 (6th Cir. 2006). Without that assent, a union may not represent retirees in litigation that could bind them. There is no proof of any such assent here, which means the plaintiffs are not precluded from litigating for themselves the question whether their health benefits had vested. At most the Third Circuit's decision on this point is persuasive—rather than binding—precedent for purposes of this case.

We are aware, as PPG argues in its brief, that our decision exposes PPG to repetitive litigation with potentially different outcomes. The short answer to that argument is that the Supreme Court is a stickler about the due-process rights of nonparties to litigation. A longer answer is that PPG has largely itself to blame for its predicament. This action and the Pennsylvania one proceeded side by side for more than a year. And yet at no point did PPG seek to join the plaintiff retirees to the Pennsylvania action. The text of Federal Rule of Civil Procedure 19(a) suggests that PPG could have done so. *See* Fed R. Civ. P. 19(a)(1)(B)(ii) (the district court "must," if feasible, order that even an unwilling person "be joined as a party" to an action if the person has an interest in the "subject of the action" and his absence may "leave an existing party subject to a substantial risk of incurring . . . multiple . . . obligations"); *see also Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1271 n.9 (5th Cir. 1990) (observing, on materially

identical facts, that "either party could petition the courts to join former union members as individual parties to a suit brought on their behalf by the union"). Joinder of these plaintiffs to the Pennsylvania action would have allowed them to litigate their own interests as parties—thus satisfying the Supreme Court's due-process concerns—while avoiding the repetitive litigation about which PPG now complains. In any event, our duty is to apply *Sturgell* by its terms.

We make shorter work of PPG's remaining two arguments. One is that our decision in *Cleveland Electric*, and by extension our decision today, purportedly conflict with "federal labor law." We doubt that such a conflict exists. In any event, "[t]he federal common law of preclusion is, of course, subject to due process limitations." *Sturgell*, 553 U.S. at 891. Those limitations are constitutional in nature; they trump "federal labor law"; and they govern our decision today.

The second argument is that we are somehow bound to apply the Third Circuit's rules of issue preclusion, which PPG says would not require the plaintiff retirees to assent to the unions' representation in order to be bound by the decision in the Pennsylvania case. This argument is meritless for at least two reasons: a panel of the Third Circuit has already held that a judgment against a union can bind nonmembers only if they "granted the union the authority to act in a representative capacity[,]" *see Hitchens v. Cnty. of Montgomery*, 98 F. App'x 106, 114 (3d Cir. 2004); and the decision we are bound to apply is the Supreme Court's decision in *Sturgell*.

\*    \*    \*

The district court's judgment is reversed, and the case remanded for proceedings consistent with this opinion.