NOT DESIGNATED FOR PUBLICATION

No. 118,300

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JULIE HOFFMAN, JEFF WHISLER, and
MARK HENLEY, for Themselves and on Behalf of All
Similarly Situated Topeka Police Department Retirees,
*Appellants*,

v.

CITY OF TOPEKA, KANSAS, Municipal Corporation;
and JIM COLSON, City Manager, City of Topeka, Kansas,
*Appellees*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed September 14, 2018. Affirmed.

*Kevin M. Fowler* and *Matthew R. Bergmann*, of Frieden, Unrein & Forbes, LLP, of Topeka, for appellants.

*Nicholas H. Jefferson*, assistant city attorney, of Topeka, for appellee.

Before MALONE, P.J., MCANANY and POWELL, JJ.

PER CURIAM: Julie Hoffman, Jeff Whisler, and Mark Henley, for themselves and on behalf of all similarly situated Topeka Police Department (TPD) retirees (plaintiffs), appeal the district court's judgment in favor of the City of Topeka (City) in a contract dispute over health insurance benefits provided by the City. Specifically, the plaintiffs allege that the City breached its collective bargaining agreement with the Fraternal Order of Police, Lodge No. 3 (FOP) over the amount the City charges TPD retirees for

1

participation in its retiree health insurance benefit. The plaintiffs first claim the district court erred by finding that they were collaterally estopped from litigating their breach of contract claim against the City based on a prior grievance proceeding filed by the FOP that was resolved in favor of the City. The plaintiffs are right on this point. Turning to the merits of the lawsuit, which the district court did not reach, the plaintiffs claim the City breached the collective bargaining agreement by charging retired police officers a higher health insurance premium than it charges active police officers. But we conclude the plain language of the agreement does not prohibit the City from doing so. Because we find that the City did not breach the collective bargaining agreement, we affirm the district court's judgment as being correct for the wrong reason.

FACTUAL AND PROCEDURAL BACKGROUND

In 1988, the Kansas Legislature enacted K.S.A. 12-5040, which requires municipal employers like the City to provide group health insurance benefits to retired employees and their dependents. See L. 1988, ch. 302, § 18. Hoffman, Whisler, and Henley are retired TPD police officers. They are also former members of the FOP, and the parties do not dispute that the plaintiffs are third-party beneficiaries of the collective bargaining agreement (Agreement) between the FOP and the City.

Up until 2016, the City always charged retirees who received health insurance coverage under the Agreement the same amount for premiums that it charged active officers. Then, when the City and the FOP were negotiating the health care terms for the 2016-2018 Agreement, the City revealed that it was going to start charging retirees a certain percentage above 100 percent of the premium rate charged to active employees.

In response, Kent Biggs, a union steward, and member of the FOP filed a "union only, non-disciplinary" grievance alleging that the City was violating the current union contract by planning to increase the retiree health insurance premiums. The grievance

2

referred to Article 13, Section 4 of the 2014-2015 Agreement providing that "[a]ll retired bargaining unit members will be allowed to transfer to the City's Retiree health benefits program upon retirement . . . provided that the retired member will pay the full amount of the group rate premiums charged by the City." Based on this provision, the grievance requested that "[p]olice retirees be charged only at the same group rate premium on health insurance as other City employees going forward and reimbursement of all overpaid premiums to retirees not correctly billed from 2012 to present."

On October 29, 2015, Jacque Russell, the City's human resources director, provided a written response denying the FOP's grievance:

> "The City has established a premium which is anticipated to cover claims expense based on recent claims experience. For clarification, prior to January 1, 2016, the retiree group premium has not been set at a different rate than the active employee group. . . . .
>
> "The labor agreement states that retirees shall pay the full amount of the group rate premiums and the City, being self-funded, established premium[s] so as to be representative of the full expense associated with health coverage for retiree group coverage. As such, I find no violation of the agreement . . . and this grievance is denied."

Under the Agreement's grievance procedures, "[i]n the event the FOP does not believe that the determination . . . resolves the grievance, the FOP may, within seven (7) calendar days, file notice of the intent to arbitrate with the Human Resources Department." The Agreement also says that "[i]n the event that the grievant fails to respond within the prescribed time sequences, the matter shall be considered resolved in favor of the City."

On November 10, 2015—12 days after Russell denied the FOP's grievance—the FOP's attorney filed its notice of intent to arbitrate. About a week later, the City denied the FOP's request to arbitrate, finding that the FOP's request was not timely so "the matter [was] considered resolved in favor of the City."

3

The City and the FOP ultimately executed Contract No. 44586, which stated the terms and conditions of the health insurance plan between the City and the FOP from January 1, 2016, through December 31, 2018. Article 13, Section 4 of Contract No. 44586 contained the same language as the 2014-2015 Agreement on the retiree health insurance benefit and premiums. Then, on January 1, 2016, the City started charging retirees 110 percent of active employees' health insurance premium costs.

On February 8, 2016, the plaintiffs filed a petition with the Shawnee County District Court, challenging the group-rate premium increase and requesting a declaratory judgment and order of mandamus in their favor. The City denied any wrongdoing and requested judgment in its favor. The parties submitted trial briefs and the matter proceeded to a bench trial on July 13, 2017, where both sides presented arguments. The only evidence at the bench trial were the exhibits attached to the trial briefs.

On July 31, 2017, the district court filed its memorandum decision and order. The written memorandum included a statement of uncontroverted facts:

"1. Plaintiffs are retired members of the TPD and the FOP bargaining unit.

"2. Defendants are City of Topeka, Kansas, a municipal entity, and Jim Colson, City Manager.

"3. Contract #44586 states the terms and conditions for the City's health insurance plan between the City of Topeka and the Fraternal Order of Police, Lodge No.3 through December 31, 2018.

"4. For the purposes of this case, there are no relevant differences between the wording of Contract #44586 and that of Contract #40371, which was in effect between January 1, 2014 and December 31, 2015.

"5. Plaintiffs are intended beneficiaries under the last paragraph of Article 13, Section 4 of City Contract #44586.

"6. The present dispute first arose as Grievance No. 13-U-2015-184 which was initiated October 15, 2015 by FOP under City Contract #43071 as a 'Union only' grievance in response to notice from the City 'that retirees of the Topeka Police

4

Department are going to be charged more than the group rate premium for 2016 in violation of the contract.'

"7. Plaintiff initiated their civil action after City Contract #44586 became effective January 1, 2016.

"8. Jacque Russell, the City's Director of Human Resources, denied the FOP's 'Union only' Grievance No. 13-U-2015-184 on October 29, 2015.

"9. Clinton E. Patty, counsel for the FOP, transmitted a written notice of intent to arbitrate in connection with the 'Union only' Grievance No. 13-U-2015-184 to Jacque Russell on November 10, 2015.

"10. Shelly Starr, the City's Chief of Litigation, sent an electronic letter to Clint Patty on or about November 16, 2015 stating that 'your notice of intent to arbitrate is not timely' and that the matter is considered resolved in favor of the City under Article 15, Section 1 of City Contract #43071.

"11. Article 15, Section 1 of Contract #44586 provides, in part, that:

> Applicability: This process shall apply to any employee who has been determined by the Public Employee Relations Board to be included within the appropriate unit of police officers and PSOs in the City of Topeka, Kansas.
>
> . . . .
>
> Failure to Respond: In the event that the grievant fails to respond within the prescribed time sequences, the matter shall be considered resolved in the favor of the City; provided, however, that the time limits shall be extended if the grievant or Union fails to respond due to illness, injury, death, or other family emergency. . . .
>
> . . . .

"12. Article 15, Section 2 of Contract #44586 provides, in part, that:

> An eligible employee shall have the right, without being subjected to restraint, interference, discrimination, reprisal or harassment of any form, to utilize the first two steps in the grievance procedure when in the employee's opinion an action taken was without just cause. If the FOP does not actively participate in the grievance process up to and including step two, the decision or resolution of the· grievance will only impact the aggrieved employee's situation and will not set precedent for future grievance

5

resolutions and/or contract interpretation. Only the Union and/or City may proceed with a grievance past Step 2.

All steps of the grievance procedure shall be followed by all parties in good faith and pursuant to the prescribed time frames, unless mutually agreed by the parties.

"13. Article 13, Section 4 of Contract #44586 provides that:

The employer agrees to make available health benefits to any bargaining unit member eligible under the provisions of the City's healthcare benefits plan.

The Employer and the Union have agreed to cost-sharing for healthcare benefits as set forth within the current Joint Memorandum of Agreement between the City of Topeka, this Union and other bargaining units recognized by the City.

The Employer retains the authority to define group health benefits and select the carrier to maintain a cost effective program. The Employer agrees to notify the FOP in advance and to meet and confer over any benefit change to such health benefits; provided, however, that the parties agree to relinquish any right to mediation and fact-finding over this issue in the event the good faith meet and confer sessions result in an impasse. It is further agreed that the parties shall, in the event of such a good faith impasse, proceed in a timely fashion to make presentations to the City Manager regarding their respective positions on the issue at impasse.

All retired bargaining unit members will be allowed to transfer to the City's Retiree health benefits program upon retirement and remain in the same until they reach age 65, provided that the retired member will pay the full amount of the group rate premiums charged by the City. If the retired member drops the City coverage, or is dropped for non-payment, the retired member will not be allowed to return coverage in the City Retiree's health insurance program."

The district court granted judgment in the City's favor, finding that the plaintiffs' claim against the City was barred by collateral estoppel based on the prior grievance proceeding that was resolved in favor of the City. The district court stated:

6

"This Court has located no on-point Kansas case discussing this issue, but the plain language of the contracts supports the notion that preclusive effect should attach to an unsuccessful grievance attempt filed by the FOP on behalf of the third-party beneficiaries to the contract (*i.e.,* FOP retirees) when those same third-party beneficiaries later seek an independent legal remedy. The FOP, acting on behalf of its retirees, litigated this issue through the grievance process, and the Director of Human Resources denied their grievance. At that point, under the terms of the contract, the FOP had seven days in which to file a notice of intent to arbitrate, or the Director's decision would become final. The FOP's failure to timely file said notice was the last act required to make the Director's decision final.

"Therefore, the Court finds, as a matter of apparent first impression in this state, that the doctrine of collateral estoppel precludes the Plaintiffs from attempting to re-litigate an issue that was previously decided adversely to them in a prior final judgment, their absence from the previous grievance process notwithstanding. Note that, while the usual sense of the word 'judgment' implies the action of a court, the Kansas Supreme Court has previously concluded that the actions of an administrative board, if not properly appealed, may be deemed a 'judgment' for purposes of collateral estoppel. [Citation omitted.] So, too, can the decisions reached through an incomplete grievance process, under the logic of the *Bradford* case, *supra*, which this court incorporates in reaching this conclusion. Therefore, the Court finds that the Plaintiffs are collaterally estopped from challenging the Defendant's prior interpretation of the at-issue contract provision by means of a declaratory judgment."

The district court also ruled that the plaintiffs were collaterally estopped from bringing their mandamus action and even if they were not collaterally estopped, mandamus would be an inappropriate remedy in this instance as a matter of law. The plaintiffs timely appealed the district court's judgment.

ANALYSIS

On appeal, the plaintiffs contend that the district court erred by granting judgment in favor of the City. The plaintiffs first claim the district court erred by finding that they

7

were collaterally estopped from litigating their breach of contract claim against the City based on the prior grievance proceeding filed by the FOP that was resolved in favor of the City. On the merits, the plaintiffs claim the City breached the collective bargaining agreement by charging retired police officers a higher health insurance premium than it charges active police officers. We will address each claim in turn.

*Did the district court err by finding that the plaintiffs were collaterally estopped from pursuing their claim against the City?*

The plaintiffs claim the district court erred by finding that they were collaterally estopped from litigating their breach of contract claim against the City based on the prior grievance proceeding filed by the FOP that was resolved in favor of the City. The plaintiffs first argue that the district court committed a procedural error by raising the affirmative defense of collateral estoppel sua sponte when the City failed to raise that defense in its answer to the petition. Second, the plaintiffs argue that the district court's collateral estoppel analysis was incorrect because the retired officers were not in privity with the FOP and there was not a prior judgment on the merits. The City argues that the district court correctly found that the issue in controversy was previously decided in the grievance proceeding, based on the clear and unambiguous terms of the contract.

The doctrine of collateral estoppel prevents a second litigation of the same issue between the same parties, even when raised in a different claim or cause of action. *In re Tax Appeal of Fleet*, 293 Kan. 768, 778, 272 P.3d 583 (2012). For collateral estoppel to apply in a case, there must be (1) a prior judgment on the merits arising from the same factual circumstances and determining the rights and liabilities of the parties, (2) the parties must be the same, or in privity, and (3) the issue litigated must have been decided and necessary to support the judgment. 293 Kan. at 778. Whether the doctrine of collateral estoppel applies is a question of law over which an appellate court has unlimited review. *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 259, 261 P.3d 943 (2011).

8

Under K.S.A. 2017 Supp. 60-208(c), collateral estoppel is an affirmative defense, and the statute requires defendants to set forth affirmative defenses in their answer to a plaintiff's petition. Failing to plead an affirmative defense amounts to a waiver of that defense. *Church of God in Christ, Inc. v. Board of Trustees*, 47 Kan. App. 2d 674, 685, 280 P.3d 795 (2012).

The City never raised collateral estoppel in its pleadings. But at the bench trial, the district court asked the plaintiffs several questions about whether the plaintiffs were precluded from litigating the same issue the FOP had addressed in its grievance. Without objecting to the propriety of those questions, the plaintiffs argued extensively that they had a right to pursue their claim against the City because they were not in privity with the FOP and they were not bound by the decision on the grievance.

"A party impliedly consents to the introduction of issues not raised in the pleadings by his failure to make a timely objection to the admission of evidence relating thereto." *Forster v. Fink,* 195 Kan. 488, 493, 407 P.2d 523 (1965). Although the parties never used the words "collateral estoppel" at the bench trial, they argued the merits of the defense at length. By addressing the defense at the bench trial, we find that the plaintiffs impliedly consented to the district court's application of the defense to the claim. See *Douglas Landscape & Design v. Miles*, 51 Kan. App. 2d 779, 785, 355 P.3d 700 (2015) (discussing implied consent). We conclude the district court was not procedurally barred from addressing the affirmative defense of collateral estoppel in its decision.

We now turn to whether the district court correctly applied the doctrine of collateral estoppel in this instance. The plaintiffs argue that they were not collaterally estopped from litigating their claim against the City because they are not in privity with the FOP and there was not a final judgment on the merits in the grievance proceeding. We will begin with the privity element of collateral estoppel.

9

One of the fundamental principles in American law is that "everyone should have his own day in court." *Taylor v. Sturgell*, 553 U.S. 880, 892-93, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). Stemming from that principle is the idea that a person who was not a party to an action generally cannot be bound by the judgment in that action. *Schutts, Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 543, 567 P.2d 1292 (1977) (quoting *Pennoyer v. Neff*, 95 U.S. 714, 724, 24 L. Ed. 565 [1877]). But there are exceptions to this rule. Sometimes, a person not a party to a prior suit is bound by the judgment if they were "in privity" with one of the parties to the prior action—or when "the party to the prior suit adequately represented the same legal interests of the nonparty." 46 Am. Jur. 2d, Judgments § 565; see *Cain v. Jacox*, 302 Kan. 431, 437, 354 P.3d 1196 (2015).

There is no singular formula or definition when determining whether the party to the prior suit adequately represented the same legal interest of the nonparty. *Cain*, 302 Kan. at 437. Instead, courts should look at the unique facts and circumstances of each individual case to decide if there is privity. 302 Kan. at 437 (citing *Goetz v. Board of Trustees*, 203 Kan. 340, 350-51, 454 P.2d 481 [1969]). Because privity is an equitable concept, "there can be no privity between persons unless the result can be defended on principles of fundamental fairness in a due process sense." *St. Paul Fire & Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 19, 974 P.2d 611 (1999).

Courts have found privity when one of the following substantive legal relationships exist:  a "concurrent relationship to the same property right (i.e. trustee and beneficiary); [a] successive relationship to the same property or right (i.e. seller and buyer); or representation of the interests of the same person." *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.,* 878 F.2d 1271, 1274-75 (10th Cir. 1989); see *Midwest Crane and Rigging, LLC v. Schneider*, No. 113,725, 2016 WL 1391805, at *7 (Kan. App. 2016) (unpublished opinion); *Anjard v. Anjard-Hillard*, No. 105,892, 2012 WL 1920375, at *4 (Kan. App. 2012) (unpublished opinion); *Van Deelen v. City of Kansas City*, No. 101,226, 2009 WL 3738833, at *4 (Kan. App. 2012) (unpublished opinion).

10

Here, the plaintiffs and the FOP have no concurrent or successive relationship to the same property right. The City suggests otherwise, arguing that "[t]here is no doubt that [plaintiffs] had an interest in the outcome of the grievance, as the grievance was brought by the FOP on their behalf, regarding a benefit that directly affected them." But the City does not explain how sharing an interest in the outcome of the grievance establishes a substantial existing or successive relationship between the plaintiffs and the FOP. Indeed, the United States Supreme Court has explained that just because two parties share "a common concern" does not necessarily mean they are in privity. See *Chemical Workers v. Pittsburgh Glass*, 404 U.S. 157, 173, 92 S. Ct. 383, 30 L. Ed. 2d. 341 (1971).

Thus, we must decide whether the last type of relationship from *Lowell Staats*—representation of the interests of the same person—applies. Up to now, Kansas courts have not addressed this question in a context similar to this case (looking at a union's interests compared to those of retired union members). But federal courts—including the United States Supreme Court—and other state courts have found the interests of those two groups are, or at least can be, substantially different. For example, in *Chemical Workers*, the Court concluded that active and retired employees' interests are not the same although they share "a common concern" in maintaining adequate benefits for the retired employees:

> "Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment. Incorporation of such a limited-purpose constituency in the bargaining unit would create the potential for severe internal conflicts that would impair the unit's ability to function and would disrupt the processes of collective bargaining. Moreover, the risk cannot be overlooked that union representatives on occasion might see fit to bargain for improved wages or other conditions favoring active employees at the expense of retirees' benefits." 404 U.S. at 173.

11

In *Amos v. PPG Industries, Inc.*, 699 F.3d 448, 452 (6th Cir. 2012), the court expounded upon *Chemical Workers* to further explain why the interests of retired union members and those of current union members could be substantially different:

> "A union's duty is to represent its *current* members, not its former ones. . . . Here, the unions' recitals in the Pennsylvania complaints make clear that it represents PPG's 'employees,' not its retirees. And it is easy to imagine instances where the two groups' interests might conflict. An employer might offer more generous benefits for current employees, for example, in exchange for reducing benefits to retirees. (Indeed, unions are routinely forced 'to make reasoned choices' to resolve conflicts *within* their own membership. [Citations omitted.]" 699 F.3d at 452 (citing *Chemical Workers,* 404 U.S. at 173; *Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 764 [7th Cir. 1988]).

The Minnesota Court of Appeals reached a similar conclusion in *City of Duluth v. Local 101 Intern. Ass'n Firefighters*, No. All-1494, 2012 WL 2202950, at *9 (Minn. Ct. App. 2012) (unpublished opinion):

> "The interests of current union members, and thus, their union, can substantially differ from those of retirees. Current firefighters may have no interest in protecting generous benefits for retired firefighters if the benefits deplete opportunities for them, especially when some of the current members—those who began working after 2007—will receive no healthcare benefits upon retirement." 2012 WL 2202950, at *9.

The reasoning from *Chemical Workers*, *Amos*, and *City of Duluth* applies to our case. Generally, unions like the FOP exist to represent and protect the wide-ranging interests of current employees—not to represent and protect retirees' interests. See *Amos*, 699 F.3d at 452. But even if the plaintiffs' and the FOP's interests are "really and substantially the same," that does not mean that it is *fair* to find privity between them.

In *Taylor v. Sturgell*, the United States Supreme Court considered whether a subsequent litigant's interests were adequately represented in a prior suit by a party who

shared the same interests. The Court stated that a party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum, "(1) [t]he interests of the nonparty and her representative are aligned [citation omitted], and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." 553 U.S. at 900. In addition, adequate representation sometimes requires "notice of the original suit to the persons alleged to have been represented." 553 U.S. at 900.

Here, the plaintiffs claim that they did not have notice of the FOP's grievance against the City. The record supports their position and the City does not argue otherwise. Without the knowledge that the FOP even filed a grievance against the City, the plaintiffs would not have known how or when to protect their interests in the grievance proceeding. Indeed, in *Richards v. Jefferson County*, 517 U.S. 793, 799, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996), the Supreme Court described the petitioner's lack of notice as troubling because "the right to be heard ensured by the guarantee of due process 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'" (quoting *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 [1950]).

Granted, the FOP filed the grievance on behalf of the retirees. But that does not mean that the FOP had the authority to represent the plaintiffs and other retired union members for the purpose of collateral estoppel. Under the Agreement, the FOP is the "certified, exclusive representative of full-time, permanent City Police Officers . . . concerning matters affecting working conditions and/or grievances of employees within the unit." The FOP is not, however, the exclusive representative of retired union members. As a result, the FOP did not have the right to represent retired union members, including the plaintiffs, unless each retiree assented to the FOP's representation. But nothing in the record shows that the retirees assented to the FOP's representation. Because the record does not show that the retirees ever received notice of the grievance or that the plaintiffs authorized

13

the FOP to represent their interests, we find that the plaintiffs' rights were not adequately represented in the grievance proceeding to fairly apply the collateral estoppel defense.

We conclude there was no privity between the plaintiffs and the FOP for the purpose of collateral estoppel under the facts and circumstances of this case. To find otherwise would violate the plaintiffs' due process right to have notice and an opportunity to be heard. There is no evidence that the plaintiffs knew about the FOP's grievance, nor is there any indication that their rights were adequately represented during the grievance process. The plaintiffs' and the FOP's interests were not substantially the same, and even if they were, it would be unfair to find privity under the circumstances of this case in order to deprive the plaintiffs of their day in court.

Even if we are wrong on the privity issue, collateral estoppel does not apply in this instance for the more fundamental reason that the grievance proceeding did not result in a final judgment on the merits of the claim. The grievance was resolved in favor of the City because the FOP made no timely request for arbitration. The grievance proceeding never reached the merits of the claim now being asserted by the plaintiffs, i.e., that the City breached the collective bargaining agreement by charging retired police officers a higher health insurance premium than it charges active police officers.

The district court found there was a final judgment on the merits since, when the FOP failed to timely file its notice of intent to arbitrate, its grievance was resolved in favor of the City pursuant to the terms of the collective bargaining agreement. But the court did not consider whether the plaintiffs' due process rights were protected in the grievance proceeding. On appeal, the City argues that the district court was correct in finding that the issue in controversy had been decided pursuant to the terms of the union contract. This argument ignores the fact that the grievance proceeding never resolved whether the City can charge retirees a higher health insurance premium than it charges active police officers. Without a prior judgment *on the merits*, the district court erred in

14

applying the doctrine of collateral estoppel in the civil proceeding to grant judgment in favor of the City. See *In re Tax Appeal of Fleet*, 293 Kan. at 778.

In summary, the plaintiffs and the FOP were not in privity for collateral estoppel purposes under the facts and circumstances of this case. Likewise, there was no prior judgment on the merits to which the plaintiffs could fairly be bound. Because two of the three requirements for collateral estoppel were not satisfied, we conclude the district court erred by finding that the plaintiffs were collaterally estopped from litigating their breach of contract claim against the City based on the prior grievance proceeding.

*Did the City breach the Agreement when it raised the retirees' health insurance premiums to 110 percent of the amount charged to active police officers?*

Turning to the merits of the lawsuit, the plaintiffs claim the City breached the collective bargaining agreement by charging retired police officers a higher health insurance premium than it charges active police officers. Both parties addressed the merits of this claim in their appellate briefs. The bench trial consisted of the presentation of trial briefs with attached exhibits and oral argument from counsel. The parties agree that a remand to district court is unnecessary in the event we reject the collateral estoppel defense, and that this court can reach the merits of the plaintiffs' claim. This court has unlimited review over the interpretation and legal effect of written contracts and owes no deference to the district court's interpretation of those contracts. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013) (quoting *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 [2007]).

15

Here, the parties dispute the provision within Article 13, Section 4 of the Agreement which sets forth the terms for group health benefits for retired FOP members: "All retired bargaining unit members will be allowed to transfer to the City's Retiree health benefits program upon retirement . . . provided that the retired member will pay the full amount of the group rate premiums charged by the City." The plaintiffs and the City both say that the language at issue is clear and unambiguous. What they dispute is the group rate the retirees are responsible for paying.

The plaintiffs initially point to K.S.A. 12-5040(b), which provides that "[e]ach such retired employee who elects to continue such coverage may be required to contribute to the employee group health benefits plan, including the administrative costs thereof, but such contribution shall not exceed 125% of the premium cost for other similarly situated employees." The plaintiffs contend that this statutory provision should be read into the Agreement under *Steele v. Latimer*, 214 Kan. 329, 336, 521 P.2d 304 (1974), which says "'all existing applicable or relevant and valid statutes, ordinances, regulations, and settled law of the land at the time a contract is made become a part of it and must be read into it just as if an express provision to the effect were inserted therein.'"

The plaintiffs then turn to the language of Article 13, Section 4 in Contract No. 44586 which provides that "[a]ll retired bargaining members will be allowed to transfer to the City's Retiree health benefits program upon retirement . . . provided that the retired member will pay the full amount of the group rate premiums charged by the City." The plaintiffs argue that this contract language, in conjunction with K.S.A. 12-5040(b), provides the retirees with coverage under the group health insurance plan as long as they pay the full amount of the group rate premiums charged by the City. The plaintiffs argue that the contractual language does not grant the City any discretion to charge retirees more than the "full amount" of the group rate premiums charged to current employees for the same level of coverage, even though the statute permits the City to charge retirees a premium of up to 125 percent of the premium charged to active employees.

16

The City argues that the retired police officers who receive coverage under the Agreement constitute their own group, as shown by the Agreement's language that retired members are "allowed to *transfer* into the City's Retiree health benefits program." (Emphasis added.) The City asserts that it sets the retiree premium based on that specific group only—not based on the rate current employees pay.

We agree with the City that there is nothing in the disputed provision that requires the City to charge the same health insurance premiums to retired officers as it charges active officers. As the City points out, the word "transfer" implies that retirees move to a different coverage group. Considering how a contract should be interpreted to give each term effect, it does not make sense that the Agreement would specify that retirees "transfer to the City's Retiree health benefits program upon retirement" if it actually intended the retirees to stay in the same group as current employees. See Restatement (Second) of Contracts § 203, comment b (1981) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous.").

Article 13, Section 4 of the Agreement expressly refers to the City's "Retiree" health benefits program. This language also implies that retired employees fall under a separate group than active employees. Otherwise, there would be no reason to designate the "Retiree" health benefits program separately from the health benefits program for active employees. If the plaintiffs' interpretation of the Agreement is correct, the provision in question would simply read "All retired bargaining unit members will be allowed to *remain in* the City's health insurance benefits program upon retirement . . . provided that the retired member will pay the full amount of the group rate premiums charged by the City."

The Agreement is clear that active employees receive a contribution from the City to help pay their health insurance premiums. The provision in question merely states that retirees shall pay the *full* amount of their group rate without contribution by the City, but it does not say that the City cannot charge the retiree group a higher premium than the active

17

employee group. The Agreement explicitly gives the City the sole authority to define the terms of group health benefits, including setting the premiums for each separate group.

The plaintiffs' main argument in both the district court and on appeal is that in the past, the City has always charged retirees the same health insurance premium as active employees. While this fact may be true, there was never anything in the collective bargaining agreements that required the City to do so. The only limitation to the City's ability to set the premium rates is established in K.S.A. 12-5040(b) which provides that a retired employee's contribution to the group health insurance plan shall not exceed 125 percent of the premium cost for other similarly situated employees. Even if retirees' premium costs are 110 percent of the premium costs for active employees, that rate falls within the parameters established in the statute.

We conclude that the City did not breach the collective bargaining agreement when it raised the retirees' health insurance premiums to 110 percent of the amount charged to active police officers. There is nothing in the plain language of the Agreement or in K.S.A. 12-5040(b) that prohibits the City from doing so. Thus, the district court correctly granted judgment on the request for declaratory relief in favor of the City. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (finding the district court's decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision).

Affirmed.