RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0005p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

LARRY ASKINS; VICKIE ASKINS,

*Plaintiffs-Appellants,*

*v.*

No. 15-3147

OHIO DEPARTMENT OF AGRICULTURE; OHIO ENVIRONMENTAL PROTECTION AGENCY; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:14-cv-01699—David A. Katz, District Judge.

Argued: October 6, 2015

Decided and Filed: January 6, 2016

Before:COLE, Chief Judge; DAUGHTREY and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Steve J. Edwards, Grove City, Ohio, for Appellants. Kelly D. McCloud, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Ohio Appellees. Peter Krzywicki, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Federal Appellee. **ON BRIEF:** Steve J. Edwards, Grove City, Ohio, for Appellants. Kelly D. McCloud, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Ohio Appellees. Peter Krzywicki, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Federal Appellee.

1

————————————

**OPINION**

————————————

COLE, Chief Judge.   Plaintiffs-Appellants Larry and Vickie Askins filed a citizen suit alleging that Defendants-Appellees U.S. Environmental Protection Agency ("U.S. EPA"), Ohio Environmental Protection Agency ("Ohio EPA"), and Ohio Department of Agriculture ("ODA") (collectively, "Defendants") violated the Clean Water Act's agency permitting procedures.  The district court held that the Clean Water Act does not permit suits against regulators for regulatory functions and dismissed for lack of subject-matter jurisdiction.  We affirm.

## I.          BACKGROUND

The U.S. EPA, Ohio EPA, and ODA work together to abate pollution in Ohio.  Pursuant to federal and state laws, each entity exercises authority over different types of pollution from specific sources.  At issue in this case is the authority to control water pollution caused by certain animal feeding operations, which is governed by the Clean Water Act, 33 U.S.C. § 1251 *et seq.*

### A.          The Clean Water Act

The Clean Water Act grants the U.S. EPA express rights and responsibilities to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters," but preserves states' "primary responsibilities and rights" to abate pollution.   33 U.S.C. § 1251(a)−(b).  The Clean Water Act requires certain animal feeding operations to obtain a permit under the national pollutant discharge elimination system ("NPDES") prior to discharging any pollutant into navigable waters.  33 U.S.C. §§ 1311(a), 1342(a).  The U.S. EPA may approve a state to administer a state-NPDES program, but the U.S. EPA retains authority to supervise it and withdraw approval.  33 U.S.C. § 1342(b)−(c); 40 C.F.R. § 123.24.  Once approved, a state must seek permission from the U.S. EPA before it can transfer all or part of the state-NPDES program to another state agency.  40 C.F.R. § 123.62(c).

B.      **Ohio's NPDES Program**

In 1974, the U.S. EPA approved the Ohio EPA to administer the state-NPDES program. In 2001, the Ohio legislature authorized ODA to submit an application to the U.S. EPA to take over the part of the state-NPDES program that regulates animal feeding operations. S.B. 141, 2000 Leg., 123rd Gen. Assemb. (Ohio 2001) (codified at Ohio Rev. Code § 903.08(A) (eff. Mar. 15, 2001)). The legislation also amended Ohio's NPDES laws to reflect the transfer, which were to go into effect after ODA received the U.S. EPA's approval. ODA submitted its application to the U.S. EPA in 2006. After a series of amendments to the federal and Ohio NPDES laws, ODA submitted its revised application to the U.S. EPA on July 8, 2015, while this appeal was pending.

C.      **Litigation Commences**

The Askinses allege that the Ohio EPA transferred its authority to administer part of the state-NPDES program to ODA when the legislation became effective in 2001. In August 2014, after several administrative appeals challenging specific NPDES permits to animal feeding operations, the Askinses filed suit in the Northern District of Ohio under the Clean Water Act's citizen-suit provision. They alleged that the following conduct violated the Clean Water Act: (1) the Ohio EPA failed to inform the U.S. EPA that it transferred authority over part of the state-NPDES Program to ODA until five years after it had done so; (2) ODA administered part of the state-NPDES Program without approval from the U.S. EPA; (3) the U.S. EPA permitted Ohio EPA to transfer part of the state-NPDES program without its approval; and (4) the U.S. EPA allowed ODA to administer part of the state-NPDES program without its approval.

The district court dismissed all of the claims, holding that the Askinses failed to establish a private cause of action under the Clean Water Act, that the U.S. EPA did not fail to perform a non-discretionary duty under the Clean Water Act, and that Defendants did not violate the Clean Water Act. *See Askins v. Ohio Dep't of Agriculture*, No. 14-CV-1699 (N.D. Ohio Jan. 27, 2015). The Askinses appealed, arguing that if the Clean Water Act does not permit this suit, "a state agency can run amok and not one citizen in Ohio can stop the resulting chaos."

## II.     ANALYSIS

### A.     Standard of Review

When a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings, unless they are clearly erroneous, and review the district court's application of the law to the facts *de novo. RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). However, it is not necessary for us to reach the factual disputes and merits of the Askinses' claims, as the district court did. Accordingly, we review *de novo* the district court's dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and construe the facts in a light most favorable to the Askinses. *See id.* at 1134−35*; Jones v. City of Lakeland, Tenn.*, 224 F.3d 518, 520 (6th Cir. 2000).

### B.     Claims Against the Ohio EPA and ODA

In their first and second claims, the Askinses allege that the Ohio EPA and ODA violated the Clean Water Act. The Clean Water Act permits citizen suits "against any person (including . . . any other governmental . . . agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of an effluent standard or limitation," relevantly defined here as "a permit or condition thereof issued under [the NPDES program]." 33 U.S.C. § 1365(a)(1), (f)(6).

States may request permission from the U.S. EPA to administer a state-NPDES program after the U.S. EPA promulgates certain guidelines that govern monitoring, reporting, enforcement, funding, personnel, and manpower. *See* 33 U.S.C. §§ 1342(b), 1314(i)(2). Under this authority, the U.S. EPA enacted a regulation that requires a state to notify the U.S. EPA if it intends to transfer authority over part of the state-NPDES program to a different agency. 40 C.F.R. § 123.62(c) ("notification requirement"). The new agency may not administer any part of the state-NPDES program without the U.S. EPA's prior approval. *Id.* The Askinses argue that compliance with this notification requirement is "part of every NPDES permit issued by Ohio." Therefore, they argue, Ohio EPA and ODA are in violation of "a condition" of every NPDES permit issued because they failed to obtain the U.S. EPA's approval prior to the transfer.

As explained more fully below, this argument fails because (1) violation of the notification requirement is not actionable in a citizen suit; (2) the notification requirement is not a "condition" of a permit; and (3) there is no private cause of action against regulators for violating procedural regulations.  Each of these reasons deprives us of jurisdiction over the Askinses' first and second claims.

### 1. Violation of the notification requirement is not actionable in a citizen suit

The Askinses allege that Ohio EPA and ODA's failure to notify the U.S. EPA prior to transferring part of the state-NPDES program is a violation of a permit.  However, a state is not required to comply with the notification requirement to avoid a citizen suit: "[c]ompliance with a permit issued pursuant to [the NPDES program] shall be deemed compliance, for purposes of [citizen suits], with §§ 1311, 1312, 1316, 1317, and 1343 [defining water standards]."  33 U.S.C. § 1342(k).  Therefore, it is axiomatic that violation of a provision other than §§ 1311, 1312, 1316, 1317, or 1343 cannot invoke the Clean Water Act's citizen-suit provision.  *See id.*; *City of Cleveland v. Ohio*, 508 F.3d 827, 847 (6th Cir. 2007) (the canon *expressio unius est exclusio alterius* "justif[ies] the inference that [associated] items not mentioned were excluded by deliberate choice, not inadvertence" and "reading the regulation expansively would impermissibly create *de facto* a new regulation under the guise of interpreting a regulation." (citations and internal quotation marks omitted)).

The notification requirement at issue here was enacted pursuant to § 1314, which is not enumerated as requiring compliance for purposes of the citizen-suit provision.  *See* 33 U.S.C. § 1342(k); 40 C.F.R. § 123.62(c) (enacting the notification requirement, which the Askinses argue was pursuant to 33 U.S.C. § 1314(i)(2)).  Accordingly, the Clean Water Act does not permit a citizen suit for violating that regulation.

### 2. The notification requirement is not a "condition" of a permit

The Clean Water Act requires the U.S. EPA to prescribe "conditions" for permits that will also be applicable to state permit programs.  33 U.S.C. § 1342(a)(2)–(3).  The Askinses allege that the notification requirement, enacted under 33 U.S.C. § 1314(i)(2), is a "condition" of

a permit.  However, this interpretation requires us to ignore language in the statute and accept an internal contradiction.

First, the Askinses' argument ignores some of the words in the statute, which is contrary to the canons of statuary construction.  *See Bennett v. Spear,* 520 U.S. 154, 173 (1997) ("It is the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section."  (citations omitted)).  For example, the U.S. EPA is required to enact conditions that "assure compliance with the requirements of paragraph (1)," which permits the U.S. EPA to issue a NPDES permit "upon condition that such discharge will meet . . . all applicable requirements under §§ 1311, 1312, 1316, 1317, 1318, and 1343."  33 U.S.C. §1342(a)(1)−(2).  Section 1314 is not enumerated as requiring "conditions."  Further, the NPDES provision references § 1314(i)(2) as a *timing* mechanism, triggering *when* states may begin applying to administer a state-NPDES program, rather than a substantive requirement, as the Askinses argue.  *See* 33 U.S.C. § 1342(b) ("At *any time after* the promulgation of the guidelines required by [§ 1314(i)(2)] . . . each State desiring to administer its own permit program . . . may submit to the [U.S. EPA an application]." (emphasis added)).

Second, the Askinses' argument fails to distinguish between the Clean Water Act's separate requirements for NPDES *programs* versus NPDES *permits*.  References to § 1314 in the NPDES provision refer to the U.S. EPA's approval of a "state permit *program*," not the state's approval of individual *permits*.  *See* 33 U.S.C. § 1342(c)(1)−(2).  The notification requirement, 40 C.F.R. §123.62(c), falls under regulations entitled "*Program* Approval, Revision, and Withdrawal," 40 C.F.R. Pt. 123, Subpt. D, §§ 123.61−64.  (emphasis added).  On the other hand, provisions referencing the *permit itself* identify discharge restrictions, none of which appear in § 1314, which is at issue here.  *See, e.g.,* 33 U.S.C. § 1342(a)(1), (b)(1)(A), (b)(2).  Indeed, the thirteen uses of the word "condition" in the NPDES provision relate to the *permit* itself, not the NPDES *program* as a whole.  *See* 33 U.S.C. § 1342(a)(1)–(3) and (5), (b)(1)(C)(i) and (iii), (b)(8), (d)(2), (h).  More telling of this distinction, the U.S. EPA enacted regulations entitled "Permit Conditions," which refer to the terms of the *permit* itself, rather than the *program* that administers them.  *Compare* 40 C.F.R. Pt. 122, Subpt. C, §§ 122.41–50 (entitled "Permit

Conditions"), *with* Pt. 123, Subpt. D, §§ 123.61−64 (entitled "Program Approval, Revision, and Withdrawal").

Third, the Askinses' broad reading of the notification requirement as a "condition" of a permit contradicts NPDES requirements. For example, state and federal permit "conditions" must be the same, *see* 33 U.S.C. § 1342(a)(3), but the U.S. EPA would not seek to transfer a state-NPDES program from one state agency to another, nor could it seek transfer approval from itself. Also, a state-NPDES program is required to have the authority to terminate the permits it issues *for cause* for violating a "condition" of the permit, 33 U.S.C. § 1342(b)(1)(C)(i), which, under the Askinses' reading, would mean a state may terminate a permit for cause for its *own* violation of permitting regulations. Finally, a condition is "[s]omething demanded or required as a prerequisite to the granting or performance of something else; a provision, a stipulation." *OED Online* "condition, n." (Oxford Univ. Press 2015). However, the U.S. EPA does not demand any prerequisites from the state for each *individual permit* the state issues, it only demands conditions for approving the entire state *program*. *See* 33 U.S.C. § 1342.

Accordingly, the Clean Water Act does not prescribe the notification requirement as a "condition" of a permit.

### 3. There is no private cause of action against regulators for violating procedural regulations

The Askinses argue that a citizen may sue a regulator for failing to follow purely procedural regulations. However, the cases they cite do not support their argument, which is also refuted by other provisions in the Clean Water Act, similar cases, and legislative history.

In *Decker v. Northwest Environmental Defense Center*, citizens invoked the Clean Water Act's citizen-suit provision against the state of Oregon, among other defendants, as a *polluter*— not a regulator. 133 S. Ct. 1326, 1333 (2013). Indeed, there was no mention of the state of Oregon as a regulator. *See generally, id.* Likewise, polluters, not regulators, were sued in *Ecological Rights Foundation v. Pacific Lumber Co. Ecological Rights*, 230 F.3d 1141 (9th Cir. 2000). Notably, no regulators were named as a defendant in *Ecological Rights Foundation*. In dicta, the Ninth Circuit stated "the Clean Water Act allows citizen suits based on violations of any conditions of a NPDES permit, even those which are purely procedural," citing the citizen-

suit provision and 33 U.S.C. § 1318.  *Id.* at 1151.  To the extent this suggests a citizen may sue for procedural violations under § 1318, it is not persuasive because the Clean Water Act does not require compliance with § 1318, or other procedural provisions, to avoid a citizen suit.  *See* 33 U.S.C. § 1365(f) (permitting citizens to sue for violations of §§ 1311, 1312, 1316, 1317, 1341, 1342, 1345(d)); 33 U.S.C. § 1342(k) ("Compliance with a permit . . . shall be deemed compliance, for purposes of [a citizen suit], with §§ 1311, 1312, 1316, 1317, and 1343.").  In any event, the Askinses allege a violation of § 1314, which discusses procedural regulations for states, not § 1318, which discusses procedural regulations for *owners* of pollutant sources.  At best, *Decker* and *Ecological Rights Foundation* suggest that a citizen may sue for procedural violations *only if* the violations result in water pollution without a NPDES permit.  Here, the Askinses do not allege that the Ohio EPA or ODA themselves polluted the water.

We must respect the limited nature of citizen suits under the Clean Water Act. If Congress intended the citizen suit to be all encompassing, it would have permitted suit for all violations of the Clean Water Act, rather than specifying limited circumstances.  *See* 33 U.S.C. § 1365(a)(1)(A) (permitting a citizen suit against persons "alleged to be in violation of an effluent standard or limitation"); *see also Bennett,* 520 U.S. at 173 (requiring courts to "give effect . . . to every clause and word of a statute"); *City of Cleveland*, 508 F.3d at 847 (*expressio unius est exclusio alterius*).  Congress also would not have limited venue to "action[s] respecting a violation *by a discharge source* of an effluent standard or limitation . . . in the judicial district in which such *source* is located."  33 U.S.C. § 1365(c)(1) (emphasis added).  Instead, the U.S. EPA and states were meant to be the primary enforcers of the Clean Water Act: "[t]he [Senate] Committee [on Public Works] intends the great volume of enforcement actions [to] be brought by the State."  *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987) (quoting S. Rep. No. 92-414, p. 64 (1971)); *see also Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 637, 642, n.5 (6th Cir. 2007); 33 U.S.C. §§ 1251, 1319.  The citizen suit serves only as a backup, "permitting citizens to *abate pollution* when the government cannot or will not command compliance."  *Gwaltney*, 484 U.S. at 62 (emphasis added) (citing legislative history).  Citizen suits are "meant to supplement rather than to supplant governmental action [therefore] citizen suits must fulfill several procedural prerequisites."  *Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d at 637 (quoting *Gwaltney*, 484 U.S. at 60).

Paradoxically, the Askinses' expansive reading of the citizen-suit provision would grant citizens *greater* enforcement authority than the U.S. EPA.  For example, the sixty-days' notice period required for a citizen suit, 33 U.S.C. § 1365(b), is shorter than the ninety-days' cure period to which a state is entitled before the U.S. EPA can proceed against it, § 1342(c)(3).  Further, in a citizen suit, the district court may enter an order to enforce the effluent standard or limitation violated and award civil penalties and costs.  *See* 33 U.S.C. § 1365(a), (d).  However, the U.S. EPA cannot obtain these remedies against a state, and is limited to withdrawing approval of the state-NPDES program.  *See* 33 U.S.C. § 1342(c)(3); 40 C.F.R. § 123.63.  Congress did not intend to give citizens greater and faster enforcement authority against a state than the U.S. EPA.

Other cases construing nearly identical environmental citizen-suit provisions have reached a similar conclusion—that a regulator's failure to follow procedural regulations is not grounds for a citizen suit.  For example, in *Sierra Club v. Korleski*, we held that the Clean Air Act's identical citizen-suit provision did not permit suits against regulators because of the citizen suit's potential penalties, shortened notice periods, different language referring to polluters versus deficient regulators, and relationship to the agency-enforcement provisions.  681 F.3d 342, 348–50 (6th Cir. 2012).  In reaching that conclusion, we adopted the Supreme Court's reasoning in *Bennett v. Spear*, construing an almost identical citizen-suit provision in the Endangered Species Act.  520 U.S. at 173.  The Court in *Bennett* also found that citizen suits for regulatory functions under the first prong of the citizen-suit provision would render superfluous the other prong, which permitted suits against the federal government as a regulator only for failing to perform non-discretionary regulatory acts or duties.  *Id*.

For similar reasons, the Clean Water Act does not permit citizen suits against regulators.  As discussed above, the citizen-suit provision provides greater penalties and faster enforcement than the agency-enforcement provisions.  *Compare* 33 U.S.C. § 1365(a), (b), (d), *with* § 1342(c)(3).  In addition, the agency-enforcement provision distinguishes a "permit violation" from a state's failure to properly regulate the state-NPDES program.  For example, the Clean Water Act uses the term "violate" or "violation" to refer to polluters who do not comply with a discharge limitation.  *See* 33 U.S.C. §§ 1365(a), 1342(h), 1342(k), 1319(a)(1), 1319(a)(3).

However, regulators who fail to follow regulatory procedures are described as "not administering a program . . . in accordance with requirements," 33 U.S.C. § 1342(c)(3), or failing to "enforce such permit conditions or limitations effectively," § 1319(a)(2). Finally, the ability to sue regulators for regulatory failures under the first prong of the citizen-suit provision, 33 U.S.C. § 1365(a)(1), would render superfluous the second prong, § 1365(a)(2), which permits suits against the U.S. EPA only for non-discretionary regulatory failures.

Accordingly, the Clean Water Act does not permit citizen suits against regulators, who are not polluters, for procedural violations.

\* \* \*

Because violation of the notification requirement is not actionable in a citizen suit, the Clean Water Act does not prescribe the notification requirement as a "condition" of a permit, and the Clean Water Act does not permit citizen suits against regulators for procedural violations, this court lacks jurisdiction over the Askinses' first and second claims against the Ohio EPA and ODA.

### C.      Claims Against the U.S. EPA

In their third and fourth claims, the Askinses allege the U.S. EPA violated the Clean Water Act. The Clean Water Act permits suits against the U.S. EPA as a regulator only if it fails to perform a non-discretionary duty. 33 U.S.C. § 1365(a)(2); *see also Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (reciting that any waiver of the United States's sovereign immunity must be unequivocal and must be narrowly construed). Here, the Askinses allege the U.S. EPA was required to "conduct a hearing whenever a State is not administering a program in accordance with [NPDES program rules under] 33 U.S.C. § 1342(b)."

However, the Clean Water Act does not require the U.S. EPA to conduct a hearing if a state fails to administer properly a state-NPDES program:

> Whenever [the U.S. EPA] determines after public hearing that a State is not administering a [state-NPDES] program approved . . . in accordance with requirements of this section, [after notice and time to cure, the U.S. EPA] shall withdraw approval of such program. [The U.S. EPA] shall not withdraw approval

of any such program unless [it] shall first have notified the State, and made public, in writing, the reasons for such withdrawal.

33 U.S.C. § 1342(c)(3). While the Clean Water Act *does* require the U.S. EPA to withdraw approval of a state-NPDES program after a hearing, notice, and time to cure, it does *not* require the U.S. EPA to hold a hearing in the first place. *See id.* Accordingly, the non-discretionary action does not kick in until *after* the hearing, but the hearing itself is discretionary. *See id.*

Here, the U.S. EPA did not hold a hearing regarding whether Ohio EPA or ODA were not meeting the requirements of the state-NPDES program, nor was it required to. Because the Askinses have not identified any non-discretionary duty the U.S. EPA failed to perform, there is no cause of action under the Clean Water Act. Accordingly, we lack jurisdiction over the Askinses' third and fourth claims against the U.S. EPA.

### III.    CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal for lack of subject-matter jurisdiction. Because the Clean Water Act prohibits this suit, we need not address the merits of the Askinses' claims, *i.e.*, whether Defendants actually violated the Clean Water Act.