NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0279n.06

Nos. 19-1979/1981

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CITY OF HIGHLAND PARK, MICHIGAN, | ) | **FILED** |
| Plaintiff-Appellant, | ) | May 18, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| ENVIRONMENTAL PROTECTION AGENCY, | ) | |
| Defendant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GREAT LAKES WATER AUTHORITY and | ) | COURT FOR THE EASTERN |
| SUSAN MCCORMICK (19-1979); CITY OF | ) | DISTRICT OF MICHIGAN |
| DETROIT, MICHIGAN, DETROIT WATER AND | ) | |
| SEWERAGE DEPARTMENT, and GREAT | ) | |
| LAKES WATER AUTHORITY (19-1981), | ) | |
| Defendants - Appellees. | ) | |

Before: BOGGS, GRIFFIN, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Like many small municipalities, the City of Highland Park relies on others to treat its wastewater. For many years Highland Park contracted with the City of Detroit and Detroit Water and Sewerage Department (DWSD) for wastewater treatment; now it relies on the Great Lakes Water Authority (GLWA). These relationships have produced extensive litigation; the present suits are the latest rounds. In both lawsuits, Highland Park complains that it was charged too much for water and wastewater treatment. In the first case (Docket No. 19-1979), Highland Park sued GLWA, GLWA's CEO Sue McCormick, the EPA, and other entities and individuals, raising twelve claims in total. The district court dismissed them all. Highland Park now hopes to resurrect only one—a claim against GLWA and McCormick for violation of a

National Pollutant Discharge Elimination System (NPDES) permit. In the second case (Docket No. 19-1981), Highland Park sued Detroit, DWSD, and GLWA, raising claims for breach of contract and declaratory relief. The district court dismissed those claims too. Highland Park appeals only the dismissal of the breach-of-contract claim. We conclude that the district court correctly dismissed Highland Park's claim based on the NPDES permit in Docket No. 19-1979 and the breach-of-contract claim in Docket No. 19-1981. Accordingly, we AFFIRM.

I.

Although Highland Park owns and operates a system to collect sanitary sewage and stormwater (wastewater) within its city limits, it does not operate a treatment facility. In the past, Detroit and DWSD provided treatment services to Highland Park, pursuant to a contract formed in 1983 (1983 Contract). In 2015, however, Detroit leased its treatment system to GLWA and, in the process, assigned any contracts with Highland Park to GLWA. Highland Park's sewage and stormwater system is connected to GLWA's treatment system, and all wastewater generated in Highland Park now goes through GLWA's treatment facility.

Not surprisingly, the operation of a treatment facility is highly regulated. To provide stormwater treatment services, DWSD was required to obtain an NPDES permit from the State of Michigan Department of Environment Quality.[1] It did so, and its Permit took effect on May 1, 2013. GLWA became a co-permittee when it leased Detroit's treatment facility. The Permit governs GLWA's operation of its treatment facilities and sets forth numerous requirements, many

---

[1] Although "[t]he United States Environmental Protection Agency (EPA) is principally responsible for administering the NPDES permit system, . . . it may lawfully delegate permit issuing authority to state government." *Nat'l Wildlife Fed'n v. Consumers Power Co.*, 862 F.2d 580, 582 (6th Cir. 1988). The EPA delegated its authority to the State of Michigan in 1974. *See Approval of State Programs*, 39 Fed. Reg. 26,061 (July 16, 1974).

related to combined sewer overflows (CSOs).[2] The EPA also regulates treatment facilities through various other policies and guidance documents. Three are relevant here: the CSO Control Policy, Guidance for Financial Capability Assessment and Schedule Development (Financial Capability Guidance), and Guidance for Funding Options (Funding Options Guidance).

Beyond the various regulations, policies, and guidance documents, a host of contracts and judgments govern the parties' relationship. Long before Detroit leased its system to GLWA, Detroit twice sued Highland Park over Highland Park's failure to pay Detroit for sewer services; Highland Park's failure to adequately charge its residents for sewer services contributed to its shortfall on its payments to Detroit. Detroit received money judgments against Highland Park in both cases, but the parties settled the cases while Highland Park's appeals were pending. The resulting settlement agreement (the 1996 Settlement Agreement) set terms to ensure Highland Park would charge and collect from its customers, so that, in turn, Highland Park would pay for Detroit's services. At the same time, the parties entered into an Amended Consent Judgment, which encapsulated many of the terms from the 1996 Settlement Agreement and explained how Highland Park would pay the arrearages it owed Detroit.

In 2013, Detroit again sued Highland Park in federal district court, once again alleging that Highland Park had failed to fully and timely pay for Detroit's treatment services. After the district court dismissed various claims, only a claim that Highland Park had breached the Amended Consent Judgment remained. The district court later dismissed that claim too, concluding that it lacked subject-matter jurisdiction. The court acknowledged that the parties had entered into various oral and written agreements since the Amended Consent Judgment. And the Amended

---

[2] The defendants explain, "A CSO occurs when a combination of stormwater and wastewater is discharged directly into a body of navigable water without treatment." Docket No. 19-1978, Appellees Br. at 7.

Consent Judgment did not provide "for federal court jurisdiction over any future billing disputes that may arise between the parties." According to the court, construing the Amended Consent Judgment in that manner "would be to provide, *in perpetuity*, a federal-court forum for garden-variety, state-law breach of contract claims."

Detroit then took its grievance to Michigan circuit court and obtained a judgment against Highland Park for nearly $20 million in unpaid wastewater-treatment charges and water-supply services. The circuit court concluded that Highland Park had breached various agreements. Highland Park's appeals from the judgment failed in both the Michigan Court of Appeals and the Michigan Supreme Court. Nonetheless, on return to the state circuit court, the court allowed Highland Park to proceed on a counterclaim as a potential setoff to the judgment. The counterclaim, which remains pending, alleged that the 1996 Settlement Agreement and Amended Consent Judgment remain in effect and prescribe the rates Detroit may charge for its services. The counterclaim also sought a declaration that Detroit had overcharged for its services.[3]

*Docket No. 19-1979 – Clean Water Act Claim*

Litigation in state court was not enough. Highland Park also sued GLWA, McCormick,[4] and other individuals and entities, including the EPA, in federal court for violations of the Clean Water Act (Docket No. 19-1979). Highland Park raised twelve claims, all of which the district court dismissed. Only one matters for this appeal, however, as Highland Park challenges only the district court's decision to dismiss Count Nine of its First Amended Complaint, in which Highland Park brought a citizen suit under the Clean Water Act against GLWA for allegedly violating the

---

[3] According to the defendants, "[t]he counterclaim has since been amended, but these basic claims remain, although now primarily against GLWA rather than [Detroit]." Docket No. 19-1981, Appellees Br. at 15 n.8.

[4] The parties treat GLWA and McCormick as one for the purposes of this appeal. We do the same, using "GLWA" to refer to both GLWA and McCormick when discussing Docket No. 19-1979.

Permit. *See* 33 U.S.C. § 1365(a). Highland Park alleged that a variety of GLWA actions had violated the Permit by failing to comply with the CSO Control Policy, the Financial Capability Guidance, or the Funding Options Guidance.

GLWA moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The district court determined that it lacked subject-matter jurisdiction over Highland Park's claim because it had "fail[ed] to allege any facts that GLWA Defendants violated a condition of a permit issued pursuant to 33 U.S.C. § 1342." The district court denied Highland Park's motion for reconsideration. Highland Park appealed.

*Docket No. 19-1981 – Breach-of-Contract Claim*

One federal suit also was not enough. So Highland Park sued Detroit, DWSD, and GLWA. Highland Park sought a declaratory judgment that (1) it had complied with the terms of the Amended Consent Judgment while (2) defendants had violated the Amended Consent Judgment (and were thus in contempt of court) because they had secured a state-court judgment against Highland Park based on rates higher than those set forth in the Amended Consent Judgment (Docket No. 19-1981). Highland Park also claimed breach of contract, alleging that the defendants had "breached one or more terms of the Settlement Agreement and Sewage Agreements by, among other things, billing Highland Park over $17.4 million from 2006 to 2014 in excess of amounts to be deposited under the [Amended Consent Judgment]."

The defendants moved to dismiss for lack of subject-matter jurisdiction. The district court granted the motion, calling Highland Park's claim an "ordinary breach-of-contract claim, which c[ould] effectively be resolved in state court" and concluding that it did "not retain perpetual jurisdiction over breach-of-contract claims arising out of the Consent Judgment." The court also declined to exercise jurisdiction over Highland Park's declaratory-judgment claims, viewing those

as Highland Park's attempt to have a federal court decide the "parties' state court breach-of-contract claims, simply clothed as a different cause of action." Highland Park appealed, challenging only the district court's determination that it lacked subject-matter jurisdiction over the breach-of-contract claim.[5]

## II. Docket No. 19-1979 – Clean Water Act Claim

The Clean Water Act's citizen-suit provision states that "any citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1). An "effluent standard or limitation" includes an NPDES permit or condition of an NPDES permit. *See id.* § 1365(f)(7). This includes state-issued NPDES permits. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1005–08 (11th Cir. 2004).

Citizen suits under the Clean Water Act are limited in nature. *Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 875 (6th Cir. 2016). "If Congress intended the citizen suit to be all encompassing, it would have permitted suit for all violations of the Clean Water Act, rather than specifying limited circumstances." *Id.* The EPA and the states remain "the primary enforcers of the Clean Water Act." *Id.* The citizen suit "serves only as a backup, 'permitting citizens to *abate pollution* when the government cannot or will not command compliance.'" *Id.* (quoting *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 62 (1987)).

Highland Park's citizen suit is premised on GLWA's alleged violation of three EPA documents—the Financial Capability Guidance, the CSO Control Policy, and the Funding Options Guidance—all of which Highland Park tries to tie to the Permit. We discuss each in turn.

---

[5] To the extent Highland Park sought to appeal the dismissal of its declaratory-judgment claims, it has forfeited any appeals of them by offering incomprehensible arguments at best. *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

*Financial Capability Guidance.* The EPA promulgated the Financial Capability Guidance in 1997. Docket No. 19-1979, R. 87-21, PageID 3671.[6] The Guidance serves two purposes: "to provide a planning tool for evaluating the financial resources a permittee has available to implement CSO controls" and "to assist the permittee, EPA and state NPDES authorities in cooperatively developing CSO control implementation schedules." *Id.* at PageID 3679–80. The Guidance cautions that it "does not recommend specific schedules for implementation of the CSO controls based on financial capability or other considerations identified in the CSO Policy. It does, however, provide general boundaries to aid all parties in negotiating reasonable and effective schedules for implementation of the CSO controls." *Id.* at PageID 3680. The parties agree that the Permit specifically references the Financial Capability Guidance only once. The Permit states:

> The permittee shall prepare an evaluation of Financial Capability, consistent with state and federal guidance, and shall submit the evaluation with the applications for reissuance of this permit . . . . The Financial Capability Report shall be in the form of previous reports utilizing the [Financial Capability Guidance], and updated with information as may be available in order to assess the permittee's ability to undertake future capital improvement projects related to the Long-Term CSO Control Program.

Docket No. 19-1979, R. 87-19, PageID 3639.

The district court was right to dismiss Highland Park's claim based on the Financial Capability Guidance, though we conclude that the dismissal is properly grounded in Federal Rule of Civil Procedure 12(b)(6), rather than Rule 12(b)(1). Rule 12(b)(1) authorizes district courts to dismiss complaints for lack of subject-matter jurisdiction. The CWA provides district courts with jurisdiction over citizen suits that allege a violation of a permit or a condition of a permit. 33 U.S.C. § 1365(a), (f). Highland Park's claim falls within the district court's jurisdiction because

---

[6] Combined Sewer Overflows—Guidance for Financial Capability Assessment and Schedule Development (Final) (EPA 832-B-97-004) (Feb. 1997), available at https://www3.epa.gov/npdes/pubs/csofc.pdf.

it alleges that GLWA violated the Permit or a condition of it by not complying with the Financial Capability Guidance, which is an express requirement of the Permit.

Nonetheless, the district court's judgment dismissing Highland Park's complaint was correct. GLWA also moved to dismiss under Rule 12(b)(6) for failure to state a claim, and we may affirm the judgment on this ground. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (resolving the case on Rule 12(b)(6) grounds after determining that the courts below erroneously dismissed under Rule 12(b)(1) because "nothing in the analysis of the courts below turned on the mistake" and "a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion"), *superseded by statute on other grounds*, Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010); *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) ("In reviewing a lower court decision, we may affirm for any reason presented in the record, even if the reason was not raised below.").

Despite the Rule 12(b)(1) label, the district court's reasoning supports dismissal under Rule 12(b)(6). "To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 904 (6th Cir. 2020). In dismissing Highland Park's claim based on the Financial Capability Guidance, the district court explained that the Permit "requires GLWA to utilize the Guidance Document only when preparing its evaluation of financial capability. Plaintiff fails to allege facts that GLWA Defendants submitted evaluations that did not conform to the Guidance Document." Docket No. 19-1979, R. 109, PageID 4974. In its denial of plaintiff's motion for reconsideration, the district court elaborated on its reasoning:

> The allegations included in Plaintiff's ninth cause of action are a combination of conclusory assertions that "[p]ermittee GLWA continues to violate its permit in failing to evaluate Financial Capability consistent with state and federal guidance" and factual allegations unrelated to the evaluation-preparation process. Plaintiff's

> factual allegations were insufficient because they related to how GLWA Defendants charge their clients—particularly Plaintiff—not to the process GLWA Defendants went through in preparing their financial evaluations or the text of the evaluations that GLWA Defendants submitted.

Docket No. 19-1979, R. 117, PageID 5146–47 (alteration in original) (citations omitted).

We agree with the district court. The Permit imposes two requirements on GLWA in relation to the Financial Capability Guidance. GLWA must (1) prepare and submit an evaluation that conforms with the Financial Capability Guidance "with the applications for reissuance of this permit," and (2) update the evaluation "with information as may be available in order to assess the permittee's ability to undertake future capital improvement projects related to the Long-Term CSO Control Program." Docket No. 19-1979, R. 87-19, PageID 3639. Thus, GLWA can violate this provision of the Permit only by failing to properly prepare or submit an evaluation along with a resubmission application or failing to update the evaluation with the required information.

The allegations in Highland Park's complaint do not relate to the preparation or submission of future resubmission applications. Indeed, Highland Park makes no mention of a resubmission application. So that leaves only the requirement that GLWA update an evaluation, but that requirement is limited. GLWA must update an evaluation only "with information as may be available in order to assess the permittee's ability to undertake future capital improvement projects related to the Long-Term CSO Control Program." *Id.* Highland Park does not allege that GLWA has failed to update an evaluation, nor does it explain what information GLWA is withholding that would allow the Michigan Department of Environmental Quality to assess GLWA's ability to undertake future improvement projects.

Highland Park instead alleges various ways in which GLWA has reduced its financial capability and overcharged Highland Park for sewer services. Elsewhere, it alleges that GLWA failed to properly calculate various charges and costs, but it does not say when these alleged

miscalculations occurred. Given that there is no mention of a resubmission application in the Amended Complaint (or by the parties at any time for that matter), we can only assume that this miscalculation occurred when Detroit and/or GLWA first obtained the Permit. So nothing in Highland Park's complaint refers to any GLWA failure in preparing or submitting a financial evaluation with a resubmission application, or any failure to update the Permit with the necessary information. As a result, Highland Park has failed to state a claim for violation of the Permit by way of a violation of the Financial Capability Guidance.

*CSO Control Policy.* The EPA published the CSO Control Policy in 1994, with the goal of "establish[ing] a consistent national approach for controlling discharges from CSOs to the Nation's waters through the [NPDES] permit program." 59 Fed. Reg. 18,688, 18,688 (Apr. 19, 1994). Under the Policy, "NPDES authorities . . . are responsible for implementing this Policy. It is their responsibility to assure that CSO permittees develop long-term CSO control plans and that NPDES permits meet the requirements of the [Clean Water Act]." *Id.* at 18,690.

The Clean Water Act requires that "[e]ach permit . . . issued pursuant to this chapter . . . for a discharge from a municipal combined storm and sanitary sewer shall conform to the [CSO] Control Policy . . . ." 33 U.S.C. § 1342(q)(1). The parties dispute whether this provision makes conformance with the CSO Control Policy a condition of the Permit. The district court said it did not. We need not decide because Highland Park has failed to state a claim in any event.

Highland Park asserts on appeal that "[t]he gravamen of [its] Ninth claim is a violation of the CSO Policy." But a review of the Amended Complaint belies that claim. The Amended Complaint quotes § 1342(q)(1)–(2) and one passage from the CSO Control Policy. The Amended Complaint then shifts to the Financial Capability Guidance, offering numerous allegations related to the creation of a financial capability plan consistent with that Guidance. The CSO Control

Policy is again mentioned briefly, within a quote from the Financial Capability Guidance. The only other reference to the CSO Control Policy (through its citation of § 1342(q)) is the following vague allegation: "GLWA is in violation of 33 USCA § 1342(c) and (q) and § 1314(i)(2) under § 1342(k) by not following its permit requirement to utilize [the Financial Capability Guidance], and updated [sic] with information as may be available to assess the permittee's ability to undertake future capital improvement projects related to the Long-Term CSO Control Program." How this amounts to a violation of the CSO Control Policy the reader is not told.

Far from being the gravamen of the complaint, as Highland Park now dubiously states, the CSO Control Policy is scarcely mentioned. Highland Park's complaint does not allege that the CSO Control Policy is part of the Permit, or that conformance with it is a condition of the Permit (other than a rote recitation of § 1342(q)). Highland Park does not highlight the portions of the CSO Control Policy (which is lengthy and convoluted) that GLWA allegedly violated, nor does it offer any facts tied to a violation of the Policy. To put it simply, Highland Park never explained how it purported to proceed by citizen suit against GLWA for violation of the CSO Control Policy.

The complaint shows clearly that Highland Park failed to pursue a claim based on the CSO Control Policy, offering at best conclusory allegations related to the Policy. The district court was right to dismiss any such claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (recognizing that conclusory allegations will not survive a motion to dismiss under Rule 12(b)(6)).

*Funding Options Guidance*. The final source of an alleged permit violation is the Funding Options Guidance, promulgated by the EPA in 1995. Highland Park's theory appears to be that the Permit incorporated the CSO Control Policy, which in turn incorporated the Funding Options Guidance, which GLWA in turn violated by charging ad valorem taxes for sewer services. We need not try to make sense of this argument. In its opening brief, Highland Park makes no attempt

to salvage its claim related to the Funding Options Guidance and instead settles for merely copying the Amended Complaint's allegations.[7] Highland Park has forfeited any argument related to the Funding Options Guidance. *See Johnson*, 440 F.3d at 845–46.

Highland Park has not shown that the district court erred by dismissing its citizen suit against GLWA in Docket No. 19-1979.

## III. Docket No. 19-1981 – Breach-of-Contract Claim

With respect to this lawsuit, Highland Park asserts jurisdiction under 28 U.S.C. § 1331, the Amended Consent Judgment, 28 U.S.C. § 1651, and prior orders of the court. The district court dismissed Highland Park's claim for lack of subject-matter jurisdiction under Rule12(b)(1), calling the claim an "ordinary breach-of-contract claim, which c[ould] effectively be resolved in state court" and concluding that the court "[did] not retain perpetual jurisdiction over breach-of-contract claims arising out of the Consent Judgment." We review the dismissal de novo, *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917, 919 (6th Cir. 2009), and conclude that the district court was right.

Federal-question jurisdiction gives district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Highland Park's complaint makes no mention of the Constitution or any federal statutes or treaties. Instead,

---

[7] Highland Park's First Amended Complaint makes only three cursory references to the Funding Options Guidance. First, it states, "EPA Guidance for Financial Capability required to be utilized as a condition of GLWA's NPDES permit specifically refers to [the Funding Options Guidance] as part of the overall CSO Control Policy." It then quotes the following passage from the Funding Options Guidance: "The primary restriction is that a user fee system must be in place that ensures that each user or user group pays its proportionate share of operating costs, based on the quantity and quality of wastes discharged. As a result, taxes may not be used to pay operating costs for these projects." The complaint then alleges, "GLWA is in clear violation of it [sic] permit requirement to utilize [the Funding Options Guidance] because it has charged Highland Park property owners an unconstitutional ad valorem tax for sewer services charged in violation of GLWA duty to charge each 'user or user group' user fees proportionately."

Highland Park appears to rest its argument for federal-question jurisdiction on the principle that district courts retain jurisdiction to enforce their own orders, including, here, the Amended Consent Judgment. We do not dispute the principle, of course. *See Pedreira v. Sunrise Children's Servs., Inc.*, 802 F.3d 865, 871 (6th Cir. 2015) ("[W]hen a court enters a consent decree, it retains jurisdiction to enforce the decree."). But that principle alone does not create jurisdiction over Highland Park's breach-of-contract claim.

The district court was right that nothing in the Amended Consent Judgment purports to reserve in the district court "perpetual jurisdiction over billing disputes between the two parties." The Consent Judgment is silent on the court's continuing jurisdiction. To the extent it contemplates future action at all, it contemplates only that "[i]n the event that Highland Park fails to pay Detroit for current or future services, Detroit may take any action it deems necessary or appropriate to obtain and ensure payment for the same and to seek any further relief as may be appropriate under the circumstances." Docket No. 19-1981, R. 16-6, PageID 202. But such a future action, i.e., a new lawsuit, would require its own jurisdictional grounding.

The Amended Consent Judgment, moreover, provides only some of the terms of the parties' relationship. Although Highland Park's breach-of-contract claim nominally asserts that defendants breached the Amended Consent Judgment, the district court rightly ascertained that the claim goes well beyond that one document. Many other agreements and orders govern the parties' relationship, including the 1983 Contract, the 1996 Settlement Agreement, other written and oral agreements, and opinions and judgments from the Michigan state court. All likely come into play when considering Highland Park's continuing quest to show that the defendants have overcharged for their services. Even Highland Park acknowledges this in its complaint. *See* Docket No. 19-1981, R. 1, PageID 15 ("Highland Park has fully and substantially complied with . . . its obligations

under the Amended Consent Judgment/Settlement Agreement, and has not breached any of the terms thereof or of the 1983 Agreement. GLWA has breached one or more terms of the Settlement Agreement and Sewage Agreements . . . .").  At bottom, then, Highland Park's claim is a run-of-the-mill breach-of-contract claim that contains no federal question.

The All Writs Act does not save Highland Park.  Federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  But the All Writs Act is not itself an independent source of jurisdiction.  *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977); *see also Baze v. Parker*, 632 F.3d 338, 345 (6th Cir. 2011).  Thus the Act cannot, by itself, pull Highland Park's breach-of-contract claim within the reach of federal jurisdiction.

Nor do prior orders of the district court save Highland Park.  Highland Park offers various orders to show that the district court has jurisdiction over disputes between Highland Park and Detroit.  But none of the orders actually considered *and found* subject-matter jurisdiction.  The one order that did specifically address jurisdiction concluded that the court *lacked* jurisdiction over an analogous claim.  And regardless of what prior district court orders say, they do not bind us, and we have an independent duty to assess subject-matter jurisdiction.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006).  We conclude that it is lacking here.

The district court appropriately dismissed for lack of jurisdiction.

\* \* \*

We AFFIRM the judgments of the district court in Docket No. 19-1979 and Docket No. 19-1981.